HONORABLE TANA LIN

TRACY TRIBBETT
PACIFIC JUSTICE INSTITUTE
6404 THREE RIVERS DRIVE
PASCO WA. 99301
(509) 713-9868
Email: ttribbett@pji.org

## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### SEATTLE DIVISION

| | |
|---|---|
| CHEYANNE DIXSON ROSA<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF ISSAQUAH ET AL<br>Defendant. | Case No.: 2:24-cv-01673-TL<br><br><br>PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERT WITNESS DR. LYNCH<br><br>NOTING DATE: JUNE 20, 2025 |

PLAINTIFFS' MOTION TO EXCLUDE
DEFENDANT'S PROPOSED EXPERT
JOHN B. LYNCH - i
CASE NO.

1

## TABLE OF CONTENTS

2                                                                                          **Page**

3    I.    INTRODUCTION ……………………………………...…………………....1

4    II.   FACTUAL BACKGROUND………………………………………….…......2

5    III.  LEGAL STANDARD……………………………………………….…...…..3

6    IV.   ARGUMENT………………………………………………………………..5

7          A. Lynch's Opinions Are Not Relevant ……….....………................................5
8
9              i.    Dr. Lynch is not qualified…………….…………………………….…6
10             ii.   Lynch's testimony does not assist the trier of fact……………………….....7
11             iii.  Lynch's report does not conform to any generally accepted explanatory theory.......9
12             iv.   Lynch's report lacks probative value as it relates to the WLAD inquiry…………...9

13         B. Lynch's Methods and Findings Are Not Reliable…...……………………………........11

14   V.    CONCLUSION…...................................................................................................14

15

16

17

18

19

20

21

22

23

24

1

# I. INTRODUCTION

2    Cheyanne Dixson (hereinafter "Plaintiff") moves to exclude Defendant's purported expert

3    Dr. Lynch ["Lynch'], pursuant to the Court's Civil Trial Scheduling Order, ECF #9, because the

4    report is not relevant nor reliable.  The issue in this case is whether vaccine alternatives, like

5    masking, testing, and off-property eating while unmasked were safe and effective, or whether it

6    created an undue hardship. Dr. Lynch's purported expertise is limited to vaccine efficacy which

7    is not an issue because the Plaintiff was exempt from the vaccine requirement due to her

8    sincerely held religious belief(s).

9    What is more, Dr. Lynch does not utilize a generally accepted method of analysis in his

10   report, and, unlike Plaintiff's expert, has not undertaken to analyze the risks associated with

11   accommodating Ms. Dixson as an unvaccinated police officer ["PO"].  His report is, therefore,

12   unreliable.

13   Lynch's literature review on global vaccination and population(s) effects and statistical

14   models based on who does and does not vaccinate does not relate to whether *this* employer could

15   grant a religious accommodation to *this* Plaintiff to have allowed her to continue working while

16   frequently testing and wearing masks, among other accommodations. Dr. Lynch gives no

17   testimony regarding how, in his expert opinion, it was safe to accommodate Ms. Dixson during

18   the height of the Omicron and Delta waves from October 18, 2021 to February 16, 2022, but not

19   thereafter. This renders his opinion irrelevant. Other opinions of Dr. Lynch are unduly prejudicial

20   and do not make an issue of fact more likely than not. Therefore, this Court should exclude the

21   report and testimony of John B. Lynch, MD, MPH.

22

## II. FACTUAL BACKGROUND

Governor Inslee's Proclamation, 21-14 et seq. ("Proclamation"), requiring vaccination of most state employees was mirrored by Mayor Pauley who required vaccination of COI employees. (Dkt #2 Complaint). Plaintiff submitted a request for a religious exemption and accommodation from the City of Issaquah ("COI") policy. Dkt #2, p. 45, Ex. 3. COI believed Ms. Dixson's beliefs to be sincerely held and exempt[ed] her from the Mayor's requirement [of vaccination]. Id., p. 50, Ex. 2 Thereafter COI concluded, confusingly, that it would be an undue hardship to accommodate Ms. Dixson, but that due to timing issues [It] could reasonably accommodate Ms. Dixson until December 15, 2021. Id. ¶5. The City stated, unequivocally, that it could not accommodate beyond the December 15 date. Id. However, thereafter, the COI engaged in negotiations with the Guild (Issaquah Police Officers Association, IPOA), and based upon those negotiations COI determined [It] could continue to safely accommodate Ms. Dixson until February 16, 2022 "to allow her time to vaccinate". Id. p. 52. Continued employment was predicated on vaccination despite Ms. Dixson having been exempted due to her sincerely held religious beliefs. Id.  The City continued to assert undue hardship while claiming that it could accommodate until February 16, 2022 with no reasoning other than negotiations with the Guild and a unilateral command that Ms. Dixson would have to vaccinate. Id.

For twelve weeks, October-February, Ms. Dixson tested twice weekly before each shift. Each test was overseen by Dustin Huberdeau and the result(s) were emailed through appropriate channels determined by COI. Tribbett Decl., Ex. E.  Ms. Dixson never tested positive for CV19. Id. p. 3 (one such test as an example).

1    The accommodation lasted for four months, until February 16, 2022, without incident.

2  Dr. Lynch fails to opine on the reason(s) why, during this period of time from October to

3  February, the accommodation of masking while performing her job duties, testing bi-weekly

4  before each shift, and eating her meals off-site in isolation was not a risk. Dkt. #2, p. 50 (see

5  gen'ly Ex. A.)

6    The exclusive list of facts and data considered by Dr. Lynch in producing his report

7  includes:  COI Administrative Order, Proclamation 21-14, COI Police Officer position

8  Description, Ms. Dixson's religious accommodation form, HR Department [Ms. Johnson's]

9  October 1, 2021 letter to Ms. Dixson regarding her request, an additional letter from Ms. Johnson

10  dated October 15, 2021 outlining safety protocols during her accommodation, email chain dated

11  October 18, 2021 regarding the accommodation between various key players at COI, email

12  between Chief Schwan and Scott Behrbaum regarding oversight of the CV19 testing of Ms.

13  Dixson, email chain dated January 5-6, 2022 between Ms. Dixson, Ms. Johnson, and Chief

14  Schwan regarding CV19 testing, Notice of Intent to separate employment dated February 2,

15  2022, Mayor Pauly's letter to Ms. Dixson separating her from employment dated February 14,

16  2022, Memorandum of Understanding ("MOU") between COI and Issaquah PO Association,

17  deposition of Ms. Dixson, declarations submitted in case 2:22-cv-01771-RAJ, and Dr. Lynch

18  physically toured the Issaquah Police Department and Jail, and reviewed photos of the same and

19  the officers' cars. Decl. Tribbett Ex. A., Expert Report of Dr. Lynch, p. 3-4.

20  **III. LEGAL STANDARD**

21    Under FRE 702, Defendant must show: (a) the expert's scientific, technical, or other

22  specialized knowledge will assist the trier of fact to understand the evidence or determine a fact

1    in issue; (b) the testimony is based on sufficient facts or data' (c) the testimony is the product of

2    reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the

3    principles and methods to the facts of the case." COI bears the burden of establishing Lynch's

4    opinions "admissibility over objections of the Plaintiff by a preponderance of the evidence." *City*

5    *of Seattle v. Monsanto Co.,* No. C16-107-RAJ-MLP, 2023 U.S. Dist. LEXIS 104516 (W.D.

6    Wash. June 15, 2023) District courts act as gatekeepers in evaluating expert testimony for

7    admissibility, and testimony that does not meet the relevant and reliable standards must be

8    excluded. Testimony is permitted if it is *both* relevant and reliable. *Neal-Lomax v. Las Vegas*

9    *Metro. Police Dep't,* 574 F. Supp. 2d 1193, 1201 (D. Nev. 2008); *Kuhmo Tire Co., Ltd. V.*

10   *Charmichael,* 526 U.S. 137, 147 (1999). To determine admissibility, the court must first

11   determine if the testimony will be relevant to the particular issues, causes of action, or defenses

12   to be proven at trial. The court has a job in reviewing this "precondition" to admissibility to look

13   for a "link" or "connection" to a fact in the case which ultimately helps the trier of fact resolve

14   disputed facts. *Many Cultures, One Message v. Clements,*  830 F. Supp. 2d 1111, 1138-39 (W.D.

15   Wash. 2011). As the Ninth Circuit held: "[w]hat is relevant depends on what must be proved…."

16   *Primiano v. Cook,* 598 F.3d 558, 567 (9th Cir. 2010).

17              The second step of the gatekeeping function is to determine reliability. Reliability

18   requires more than the "….*ipse dixit* of the expert" to pass the reliability test. *Sonneveldt v.*

19   *Mazda Motor of Am., Inc.,* N0. 23-55325, 2024 U.S. App. LEXIS 32836, at *5 (9th Cir. Dec. 30,

20   2024) (*quoting Gen. Elec. Co.,* 522 U.S. 136, 146, (1997)). Expert testimony is reliable if it is

21   "based on sufficient facts or data," "is the product of reliable principles and methods," and

22   "reflects a reliable application of the principles and methods to the facts of the case." Fed. R.

23   Evid. 702 (b)(c)(d). Expert testimony is reliable "if the knowledge underlying [the opinion] 'has

1  a reliable basis in the knowledge and experience of [the relevant] discipline.'" *United States v.*

2  *Sandoval-Mendoza,* 472 F.3d 645, 654 (9th Cir. 2006) (*quoting Kumo Tire,* 526 U.S. at 149).

3                                  **IV. ARGUMENT**

4      **A.  Lynch's Opinions Are Not Relevant**

5          The first prong under FRE 702 goes to relevance. *Van Loo v. United States,* No. 3:23-cv-

6  05618-DGE, 2025 U.S. Dist. LEXIS 38652, at *4-6 (W.D. Wash. Mar. 4, 2025). There are four

7  factors the court should consider in determining whether an expert's opinion will assist the trier

8  of fact:  "(i) whether the expert is qualified; (ii) whether the subject matter of the testimony is

9  proper for the jury's consideration; (iii) whether the testimony conforms to a generally accepted

10  explanatory theory; (iv) whether the probative value of the testimony outweighs its prejudicial

11  effect." *Scott v. Ross,* 140 F.3d 1275, 1285-86 *(*9th Cir. 1998).

12          "To determine the helpfulness of an expert's testimony, courts evaluate whether the

13  testimony makes a fact of consequence more or less probable." (*Van Loo, at *4-6)(quoting*

14  *Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1184 (9th Cir. 2002)). When the research is too

15  generic and not tailored to the facts of the case it is not helpful. *Many Cultures,* 830 F. Supp.,

16  1141-42, (2011). Lynch's report and expert testimony do not meet the relevance prong under

17  FRE 702 and must be excluded due to the generic and "off the rack" nature of his report.

18      **i.      Dr. Lynch is not qualified**

19          Dr. Lynch is not a scientist and to the extent he purports to be an expert his expertise is

20  limited to the efficacy of [CV-19] vaccines. Decl. Tribbett, Ex. A. Report of Dr. Lynch  CV. The

21  efficacy of CV19 vaccines [is] not relevant to the inquiry; nor do such facts make

1    accommodation more or less probable. *Many Cultures, One Message,* at 1138-39 ,*Van Loo*, at

2    *4-6). Lynch has previously admitted he had "not performed epidemiological analysis, you

3    know, independent experiments." Decl. Tribbett, Ex. D., Dep. Dr. Lynch, Fisher v. DFI, p. 24:5-

4    6. Lynch gained his knowledge from reading medical journals of true experts who performed

5    research. The reading of other expert's reports is something any doctor could do.

6        Dr. Lynch is not a legal or human resource expert and cannot give an expert opinion

7    relating to topics on such matters. Tribbett Decl. Ex. B Lynch Dep. 7:5-18. Lynch has never

8    participated in the development, analysis, or author[ship] of a peer reviewed article relating to

9    testing [for CV19]. Id., 14:3-8, see also CV. Comments and opinions relating to masks and tests

10   are observations and recitations relating to what Lynch has read.

11       Lynch admitted he was not an expert with respect to masking and testing. Ex. D, Lynch

12   Dep. 19:2-22, 22:15-24:8. When asked during [that] deposition if he had conducted any research

13   regarding the efficacy of masks, regarding CV19 testing, and specifically antigen tests, or even

14   regarding the vaccine(s) itself, Lynch gave an evasive boilerplate answer: "I would have to go

15   back and look at my list of publications" (with respect to research regarding masks) Id. at 22:15-

16   24. A review of the CV provided by Lynch shows that he has no original research on the same

17   topics. He admitted he lacked the ability to analyze factors involved with assessing the risk

18   reduction associated with the use of masks. *Id.* 23:21-25.

19       U of W and Harborview, Lynch's employer, developed a PCR test which Lynch played no

20   role in. Ex. B. 13:23-14:14:8. Lynch was unaware what type of test was utilized by COI in

21   testing Ms. Dixson. Id. 23:6-15. Lynch identified himself as a non-expert when it came to

1  analyzing the tests used by the COI for jail inmates which were the same tests utilized by COI

2  for Ms. Dixson. Id. 27:14-28:1

3      Lynch does have expertise as it relates to vaccines, but vaccines and vaccine efficacy

4  [are] not the relevant inquiry in this case. (see Id. 70:22-72:5).  Lynch has conducted no original

5  research. Decl. Tribbett Ex. C. Dep. Dr. Lynch, Carlson v. City of Redmond 54:11-17. The one

6  published article attributable to Lynch maintain[ed] that masking and testing in EMS

7  professionals effectively prevented both the acquisition and onward transmission of CV19. Decl.

8  Tribbett Ex. E, p. 4, Lynch Article. A turn-about from his report submitted in this case.  However,

9  he was only a co-author, and his CV cites to no study or report that contradict[ed] the assertion

10 that masking and testing are effective. His expert report contradicts his own prior findings. Ex. B

11 101:14-106:7.

12     **ii.    Lynch's testimony does not assist the trier of fact**

13     Lynch's testimony also fails the second factor. Plaintiff has alleged claims under WLAD

14 relating to the hardship of accommodating with social distancing, masking, eating/de-masking

15 off COI property, and testing. Lynch's report is conclusory, vague, and a general endorsement for

16 vaccination and vaccine mandates.

17     The issue in this case is whether vaccine alternatives utilized by COI were safe and

18 effective both during the time Ms. Dixson was accommodated (from October 2021-February

19 2022) and [demonstrably] thereafter. The report, ¶¶14-32, discusses the FDA development and

20 approval of vaccines which are not contested by the Plaintiff and not at issue here. Thereafter,

21 ¶¶33-54, discusses why vaccines are so important. Ms. Dixson is not contesting the importance

22 of vaccines and this information would not assist the trier of fact in determining if masking,

1  testing, and social distancing are reasonable risks in accommodation. The introduction of these

2  facts is more likely to prejudice the trier of fact by implying that Ms. Dixson contests vaccines

3  and FDA approval and/or importance or efficacy. (FRE 403) This is simply not true and the

4  inclusion is prejudicial.

5        Plaintiff does not contest that the vaccines were developed and tested to prevent serious

6  illness and death; nor does she challenge the COI's right to implement a vaccine mandate.

7  Rather, Ms. Dixson states that the COI could have continued to accommodate her without undue

8  hardship or burden. Lynch's report fails to speak to the key issue: how could masking and testing

9  be safe and effective from October to February and then unsafe or ineffective starting February

10 16, 2022? The trier of fact ultimately must make the determination and Lynch's report does not

11 assist in this inquiry. In fact, Lynch admitted that he did not know anything about the testing of

12 Ms. Dixson. Ex. B, 87:8-20, 88:3-10, 116:2-5. Lynch cannot opine on what the risk of a "false

13 negative or positive" test would be because he did not know anything about the test used, the

14 cadence of testing, or other aspects of the process Id. and Ex. A ¶¶ 94, 44, 46, 47.  COI did not

15 provide Lynch with any of the bi-weekly test results to assist in his report formulation. Id. 84:3-

16 9, see e.g. Ex. E, p.3. The only opinion Lynch could give regarding Ms. Dixson in an expert

17 capacity was that, "she should have gotten vaccinated." Id. 88:20-24 In fact, Lynch disagreed

18 with the entirety of COI's decision to accommodate Ms. Dixson and will likely confuse the trier

19 of fact not assist [them]. Id. 88:14-24, 91:21-92:6. Lynch also could not opine on why COI

20 accommodated Ms. Dixson to allow her more time to become vaccinated when she was already

21 exempt. Id. 40:14-41:7.

22        Because Lynch was not provided with any of the information relating to the bi-weekly

23 testing of Ms. Dixson the report has no original analysis or information relating to Ms. Dixson's

1  risk of transmission while tested and masked. Ex. B 84:3-9, Ex. A ¶¶84-95.  Dr. Lynch's report,

2  lacking basic information relating to the accommodations utilized, cannot be of assistance to the

3  trier of fact. Statements such as those made in ¶41 relate to public health strategy which is not

4  the inquiry in a WLAD accommodation case. Ex. A ¶41. The paragraphs wherein Lynch

5  discusses antigen tests are merely a recitation of research papers by other experts, and Lynch

6  does not relate the methodology back to the facts of this case. Id. ¶¶45-48. Further, Lynch did not

7  believe that masking was reasonable because COI never provided [him] with a "fit test" from

8  Ms. Dixson while using an N95 which is required by OSHA. Ex. B 35:6-22. Nor is he an expert

9  in masks. The lack of specific knowledge regarding Ms. Dixson's accommodations are fatal to

10  the relevance inquiry.

11        Lynch's testimony and report do not make any facts of consequence in this case more or

12  less probably. (*Van Loo*). The Supreme Court requires Defendant to bear some risk as long as it

13  does not rise to an excessive or "unjustifiable" level. *Groff v. DeJoy*, 143 S. Ct. 2279, 2294 (U.S.

14  2023). The report and testimony do not state what residual risk remains with masking and testing

15  in place because Lynch is not an expert capable of opining on such facts. Lynch believes that

16  masking is a reasonable combined mitigation approach in a temporary fashion but fails to

17  determine how long it would be reasonable for. Id. 36:6-19. Lynch knows that it is impossible to

18  reduce all risk, but failed to opine on the risk Ms. Dixson posed in this case. Lynch has admitted

19  that vaccination was not a "silver bullet" (see Ex. C, Lynch Dep., Carlson v. City of Redmond, p.

20  40:11-47:17).

21        **iii.    Lynch's report does not conform to any generally accepted explanatory**
22                **theory**
23
24                (see argument infra re reliability)
25

PLAINTIFFS' MOTION TO EXCLUDE
DEFENDANT'S PROPOSED EXPERT
JOHN B. LYNCH - 9
CASE NO.

1          **iv.    Lynch's report lacks probative value as it relates to the WLAD inquiry**

2          The report itself will result in "confusion of the issues" under FRE 403. It contains many

3    paragraphs discussing the origins, progression, and supposed benefits of COVID vaccination,

4    which have nothing to do with the issues involved in this case, does not help a trier of fact, and

5    therefore, is not relevant.  Ex. A, Lynch Rep. at ¶7-61. The main issues to be decided at trial are

6    whether masking and testing were reasonable accommodations for the Plaintiff, in her specific

7    actual daily job duties, what an acceptable residual risk after masking and testing would or would

8    not be under *Groff,* or if masking and testing would pose an undue hardship on the COI's

9    business. The statements relating to the above are inflammatory rather than probative as the

10   pandemic is a sensitive topic through which everyone suffered, but that is not an issue before this

11   court. (*See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).  Evidence is unfairly

12   prejudicial when it has an "'undue tendency to suggest decision on an improper basis, commonly,

13   though not necessarily, an emotional one.'" *Id.* (quoting Adv. Comm. Notes

14   to **Fed. R. Evid. 403**).

15         Even if the Dr. Lynch's testimony and report go to establish safety risks for unvaccinated

16   individuals, that still does not help a trier of fact decide if masking and testing were reasonable

17   accommodations for this Plaintiff, given Plaintiff's particular circumstances. Opinions like

18   "People should get vaccinated regardless of whether they were infected with COVID-19 for

19   several reasons" have nothing to do with the issues in this case. Ex. A ¶ 31. Lynch could not

20   opine on what the residual risk of acquisition and transmission a vaccinated and masked person

21   posed compared to a masked unvaccinated person because there were too many variables. Id.

22   59:2-60:1

1    The section addressing vaccine requirements and post-vaccine variants tend to mislead a

2    trier of fact into thinking that Ms. Dixson is contesting the Orders, she is not. She is merely

3    requesting, as allowed by the Orders, an examination of her right to a reasonable accommodation

4    thereto. None of the information contained in ¶¶58-69 discuss how masking and/or testing affect

5    the transmissibility and acquisition of the CV19 variants, whether positively or negatively.

6    The inquiry is not about equivalents and these opinions do not make a fact of

7    consequence more or less probable. (*see Hemmings.*, 285 F.3d, 1184 (9th Cir. 2002)). Whether

8    masking and testing was an effective method to reduce the risk of a single employee to a

9    reasonable level is the singular issue this expert is qualified to opine on and he fails to hit the

10    mark.

11    **B. Lynch's Methods and Findings Are Not Reliable**

12    An expert's opinion must also be reliable. The Supreme Court has outlined several factors

13    to help a court determine whether the expert's methods are reliable:

14    (1) Whether a scientific theory or technique can be (and has been) tested; (2) whether the
15    theory or technique has been subjected to peer review and publication; (3) known or
16    potential rate of error and the existence and maintenance of standards controlling the
17    techniques operation; and (4) whether the technique is generally accepted.
18    *Neal Lomax,* 574 F.Supp. 2d at 1202 (citing *Daubert I,* 509 U.S. 593-94).
19
20    These factors are neither a "test" nor a "checklist" (see *Id.* at 593). An expert's opinion

21    may be excluded if it "…employed no discernable methodology…" and instead the expert

22    simply "…relied upon his experience and read the materials and offered his opinion." *Liv v. Ne.*

23    *Univ.,* No. 2:22-cv-004444-LK, at *69 (W.D. Wash. May 30, 2023)(*quoting Qhine v. Buttigieg,*

24    No. 2:20-cv-01761-RAJ, at *3 (W.D. Wash Sept. 15, 2022). This is exactly what Lynch has done.

25    The courts may also exclude experts when their reports "fail to articulate a verifiable

PLAINTIFFS' MOTION TO EXCLUDE
DEFENDANT'S PROPOSED EXPERT
JOHN B. LYNCH - 11
CASE NO.

1    methodological approach." *Li*, at 75-76 (2023). Courts must assess whether the expert's report

2    and testimony are based on reliable information and the reasoning or methods employed to

3    formulate an opinion make sense considering the facts and the methods or reasoning are applied

4    to the case. (*see Youngevity Int'l v. Smith,* No. 16-cv-704-BTM at. *12 (S.D. Cal. July 5, 2019)

5    (*quoting Kuhmo Tire,* 526 U.S. at 158) (see also *Hangarter v. Provident Life & Accident Ins. Co.,*

6    383 F.3d 998, 1017 (9th Cir. 2004)).

7            Here, Lynch presents no facts and data other than recitations of state, national, and global

8    agenc[ies], fails to use reliable principals and methods of analyzing the risk of accommodating

9    Ms. Dixson, and has not reflected a reliable application of principles and methods he cites to the

10   facts of this case. FRE 702 (b)(c)(d). Lynch reviews a study that reviewed studies regarding

11   Antigen tests (Ex. A ¶45), but admitted he did not know what tests COI utilized, the frequency of

12   the use, the rate of positive tests of Ms. Dixson or any other facts that would make his

13   assessment reliable. Ex. B, 87:8-20, 88:3-10, 116:2-15. He cites to data regarding PCR tests not

14   knowing whether COI used PCR tests. Ex. A ¶47, Ex. B 84:3-9. The report echoes back Lynch's

15   own opinion which is not a theory, technique, or methodology applied to this set of facts and this

16   Plaintiff.  There are no methods used to analyze the risk of this Plaintiff with her

17   accommodations in place which is the *sin qua non* of the inquiry.  In fact, Lynch has no data

18   regarding the COI employees and positive CV19 tests in his report nor could he recall being

19   given any despite the City tracking positive tests amongst employees. Id., Lynch Dep. 98:6-15,

20   99:8-13. Although Lynch generally cites to public health data there are no communications to

21   Ms. Dixson indicat[ing] COI was relying on health data. Dkt #2, p. 50-64.

22   Lynch applies no method or analysis regarding the change from October 2021 to February 2022.

23   Lynch's own report states that the data available from August 2021 through February 2022 show

1    that "an unvaccinated person posed a materially higher risk of transmitting CV-19." Id. ¶88 The

2    report does not resolve how COI accommodated, presumably safely, Ms. Dixson during this

3    time, but could not following the preset February 16, 2022 date.

4        Nor does the report utilize any scientific theory or technique to resolve the burning

5    question: what was the actual risk Ms. Dixson posed? Plaintiff's expert answers this exact

6    question. Lynch fails to articulate any kind of approach to this question. (see *Li* at 75-76, W.D.

7    Wash. 2023). Lynch does not show that COI followed recommendations from the CDC and

8    Washington DOH. Ex. A ¶91 Further, COI only selectively followed such recommendations, and

9    refused to require booster shots which Lynch opined should have been ordered to treat

10   circulating variants (Delta and Omicron). Id. 15:18-23, 75:1-15, 75:21-76:1, 79:9-19, 79:20-25,

11   80:8-14, Ex. C, 49:3-50:6.

12       The report should also be excluded, and Dr. Lynch prevented from testifying based on his

13   overreach in assessing the Plaintiffs' actual day to day activities and work environments because

14   he is not a general witness with personal knowledge of her job duties and actual responsibilities,

15   or an expert on HR decisions like accommodations, or the Plaintiff's work duties. Ex. A at ¶84-

16   87. Dr. Lynch has performed no risk modeling for transmission of CV19 while masked. Ex. D

17   Fisher Lynch Dep. 49:14-24, 19:2-20:8, 21:23-22:7, 23:1-25

18       The same flaws present in the Blanck report in *Li. V. Ne. Univ* are present in Lynch's

19   report ("Thirty-two pages and 110 footnotes do not overcome Dr. Blanck's fatal omission of an

20   indispensable component to any reliable opinion: an explanation of his methodology and how he

21   applied it to reach his conclusions.") Dr. Lynch's 51 page report, 70 pages of exhibits and 127

22   footnotes suffer the same flaws. Nowhere in the report, due to lack of information provided to

23   Lynch, is the specific testing and masking program applied to Ms. Dixson analyzed for risk.

1   Given that each bi-weekly test was kept and tracked by COI it would be crucial to [his] opinion

2   regarding the risk of Ms. Dixson to know the outcome of those tests whether positive or negative

3   and relate it to the overall premise he opines upon in his report. An opinion is not reliable if it is

4   not based on the facts of a case.

5       The final section of the report titled "Vaccine Hesitancy and Misinformation" is likely to

6   be more prejudicial than beneficial to the inquiry. (FRE 403) The relative risk of a vaccinated

7   and unvaccinated person discussed by Lynch assumes no other mitigating layers of safety such as

8   masking and testing. Id. ¶74.

9                                      **IV. CONCLUSION**

10      In closing, Dr. Lynch's [testimony] does not make a fact of consequence more or less

11  probable." (*Van Loo* No. 3:23-cv-05618-DGE, 2025 U.S. Dist. LEXIS 38652, (2025) (*quoting*

12  *Hemmings.*, 285 F.3d, 1184 (9th Cir. 2002)), and [his] testimony is not reliable because it is not

13  "based on sufficient facts or data," nor is it "the product of reliable principles and methods," and

14  "reflects [no] reliable application of the principles and methods to the facts of [Ms. Dixson's]

15  case." (Fed. R. Evid. 702 (b),(c),(d))

16

17

18

19  DATED: May 23, 2025

20

21

22                                                                    **s/ Tracy Tribbett**
    _____

PLAINTIFFS' MOTION TO EXCLUDE
DEFENDANT'S PROPOSED EXPERT
JOHN B. LYNCH - 14
CASE NO.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

PACIFIC JUSTICE INSTITUTE

TRACY TRIBBETT (WSBA #35922)
6404 THREE RIVERS DRIVE
PASCO, WA 99301
(509)-713-9868
ttribbett@pji.org

ATTORNEY FOR PLAINTIFF

I certify that this memorandum contains 4197 words, in compliance with the Local Civil Rules.

PLAINTIFFS' MOTION TO EXCLUDE
DEFENDANT'S PROPOSED EXPERT
JOHN B. LYNCH - 15
CASE NO.

1

2

3

4

5

6  I certify that this motion was served on opposing Counsel of record via the Court's CM/ECF
7  filing system.

8

9  May 23, 2025

10                                                      /s/ Tracy Tribbett
11                                                   Pacific Justice Institute
12                                              Tracy Tribbett, WSBA #35922
13                                                  6404 Three Rivers Drive
14                                                       Pasco, WA 99301
15                                                     ttribbett@pji.org
16

17

18

19

20

PLAINTIFFS' MOTION TO EXCLUDE
DEFENDANT'S PROPOSED EXPERT
JOHN B. LYNCH - 16
CASE NO.