UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHEYANNE [DIXSON] ROSA,<br><br>　　　　　　　Plaintiff,<br>　　v.<br><br>CITY OF ISSAQUAH, a municipal corporation in and for the State of Washington,<br><br>　　　　　　　Defendant. | CASE NO. 2:24-cv-01673-TL<br><br>ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT |

This matter is before the Court on Plaintiff's motion to exclude Defendant's expert Dr. John Lynch. (Dkt. No. 20). Having considered the motion, Defendant's response (Dkt. No. 28), Plaintiff's reply (Dkt. No. 33), the relevant record, and oral argument presented on August 28, 2025, the Court DENIES the motion.

//

//

//

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 1

## I. Background[1]

The Court assumes familiarity with the facts of this case, which arises out of Plaintiff's 2022 termination as a police officer with the Issaquah Police Department after Defendant, the City of Issaquah, determined it could not accommodate Plaintiff's religious exemption to vaccination against SARS-CoV-2, an employment requirement implemented by Defendant during the COVID-19 pandemic.[2] *See generally* Dkt. No. 1-2 (Complaint).

On January 21, 2025, Defendant produced the expert report of John Lynch, M.D., a board-certified physician in infectious disease. Dkt. No. 21-1 (Lynch Report). Lynch's proffered testimony includes background information on the COVID-19 pandemic and the development of the first COVID-19 vaccines (*see id.* ¶¶ 7–32), as well as opinions including that

(1) "Vaccination against COVID-19 is . . . extremely safe[] and highly effective at preventing transmission of the virus and especially severe disease and death," and no other public health strategy is as effective in combatting COVID-19. *Id.* ¶ 69.

(2) "Mitigation techniques such as masking, testing, and social distancing are inferior to vaccination" (*id.* ¶ 95), and no data supports their use as a substitution for vaccination (*id.* ¶ 92).

---

[1] As an initial matter, the Court notes that Plaintiff's counsel has not met this Court's standards of quality in the briefing on this motion or other submissions to the Court. Plaintiff's instant motion and reply are riddled with typographical errors and improper citations. As just one example, page 13 of the motion includes citations to opinions from cases called "*Liv v. Ne. Univ.*," "*Qhine v. Buttigieg*," and, simply, "*Neal Lomax*." Dkt. No. 20 at 13. As neither a complete federal reporter citation nor an electronic database identifier was provided for any of the three, and as the docket number provided for "*Liv*" was incorrect, it took some effort for the Court to decipher that the opinions counsel intended to cite were actually *Li v. Northeastern University,* No. C22-444, 2023 WL 3722227 (W.D. Wash. May 30, 2023), *Rhine v. Buttigieg*, No. C20-1761, 2022 WL 7729817 (W.D. Wash. Sep. 15, 2022), and *Neal-Lomax v. Las Vegas Metropolitan Police Department*, 574 F. Supp. 2d 1193 (D. Nev. 2008). On the same page, counsel uses a short citation for "*Daubert I*," evidently *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579 (1993), although *Daubert* is not cited elsewhere in the motion. These and numerous similar errors and inconsistent formatting choices presented challenges for the Court and delayed its ruling on this motion. This type of submission is not at the level of quality that this Court expects.

[2] For simplicity, the Court will refer in this order to both the SARS-CoV-2 virus and the disease it causes as "COVID-19."
ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 2

(3)   COVID-19 (a) is spread via aerosols that are transmitted over distances, even if the infected person is masked, (b) can persist in indoor spaces after the person leaves, and (c) can be spread outdoors. *Id.* ¶¶ 65–66.

(4)   Police officers have some of the highest risks of COVID-19 exposure and also "interact with individuals and groups of people from communities of color, notably the Hispanic and Pacific Islander/Native Hawaiian communities, which were disproportionately impacted by COVID-19 infections, severe disease, and death." *Id.* ¶¶ 65-66.

(5)   "Data available at the time [of Plaintiff's termination] established that an unvaccinated person posed materially higher risks of transmitting COVID-19, including increasing the potential for causing an outbreak, contracting COVID-19, and developing severe disease, compared with a vaccinated person." *Id.* ¶ 95.

(6)   Based on Plaintiff's job duties and the data available at the time, allowing Plaintiff to work unvaccinated, even with other mitigation measures in place, "would have significantly increased the risk that Plaintiff would infect co-workers and members of the public with COVID-19 or contract the virus herself." *Id.*

After Defendant moved for summary judgment (Dkt. No. 14), Plaintiff moved to exclude all testimony by Dr. Lynch (Dkt. No. 20). Defendant opposes the motion. Dkt. No. 28.

## II.   LEGAL STANDARD

### A.   Expert Witness Testimony

Federal Rule of Evidence ("FRE") 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" if

(a) the expert's scientific, technical, or other specialized

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

This imposes an obligation on a district court to act as a gatekeeper and evaluate the admissibility of expert opinion testimony to ensure that such evidence "is not only relevant, but reliable." *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)); *see also Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) ("We have interpreted Rule 702 to require that expert testimony be both relevant and reliable." (citation modified)), *overruled on other grounds by United States v. Bacon,* 979 F.3d 766 (9th Cir. 2020) (en banc).

"[E]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *Engilis v. Monsanto Co.*, No. 23-4201, 2025 WL 2315898, at *3 (9th Cir. Aug. 12, 2025) (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)). Expert opinion "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (quoting *Alaska Rent-A-Car*, 738 F.3d at 969); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (noting opinion evidence should not be admitted "that is connected to existing data only by the *ipse dixit* of the expert" or where there is "simply too great an analytical gap between the data and the opinion proffered").

To assess the reliability of an expert opinion, courts ordinarily look to such factors as (1) whether the expert's theory or technique can be tested, (2) whether it has been subjected to peer review and publication, (3) its known or potential error rate, and (4) whether it enjoys general acceptance within the relevant community. *Estate of Barabin*, 740 F.3d at 463 (citing *Daubert*, 509 U.S. at 592–94) ("The Supreme Court has suggested several factors that can be

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 4

used to determine the reliability of expert testimony . . . ."). This is a flexible inquiry, however, and the trial court has discretion to decide how to assess the reliability of opinion testimony based on the circumstances of each case. *Primiano v. Cook*, 598 F.3d 558 (Apr. 27, 2010) (quoting *Kumho Tire Co.*, 526 U.S. at 141, 152). The court may, but is not required to, hold a "*Daubert* hearing" to determine the relevance and reliability of an expert opinion. *Estate of Barabin*, 740 F.3d at 463–64.

A "proponent of expert testimony 'has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.'" *Engilis*, 2025 WL 2315898, at *5 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). In evaluating proffered expert testimony, "the district court is 'a gatekeeper, not a fact finder.'" *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022) (quoting *Primiano*, 598 F.3d at 568). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 1028 (quoting *Primiano*, 598 F.3d at 564).

**B.  Exclusion of Relevant Evidence**

Like all evidence, expert testimony must be relevant in order to be admissible. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also United States v. Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000).

"Rule 403 of the Federal Rules of Evidence allows a trial judge to exercise [their] discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Emmons v. Orange*, 46 F. App'x 444 (9th Cir. 2002) (citing Fed. R. Evid. 403); *accord United States v.*

*Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011) ("district court has discretion to exclude even relevant evidence" under Rule 403).

### III. DISCUSSION

Plaintiff asks the Court to exclude all testimony by Defendant's proposed expert, Dr. John Lynch. Dkt. No. 20. Plaintiff asserts that Dr. Lynch is not qualified to opine as an expert except on the "efficacy of [CV-19] vaccines"[3] (*id.* at 7 (brackets[4] in original)), that his opinions are irrelevant (*id.* at 7, 9, 11) and unreliable (*id.* at 13–16), and that his testimony and report will confuse the issues and should be excluded (*id.* at 10, 11, 12).

#### A. Rule 702 Challenge

In exercising its gatekeeper role, the Court will evaluate Dr. Lynch's expert qualifications, as well as the relevance and reliability of his proffered opinion testimony.

##### 1. Dr. Lynch's Qualifications

Dr. Lynch is a board-certified physician in infectious disease. Dkt. No. 30 (Lynch Decl.) ¶ 1. He currently works as an Associate Medical Director of Harborview Medical Center and a Professor of Medicine at the University of Washington (UW) and actively practices medicine as an infectious disease clinician. *Id*. His work at Harborview includes serving as the medical director for the occupational health program, and he also served on the Board of Directors of the Infectious Diseases Society of America from 2019 to 2022. *Id.* ¶¶ 1, 5. From February 2020 until December 2023, Dr. Lynch was the Medical-Technical Team Lead for UW Medicine's COVID-19 Emergency Operations Center, in which role he oversaw all UW Medicine's

---

[3] Elsewhere, Plaintiff asserts that "the singular issue" on which Dr. Lynch is qualified to opine is "[w]hether masking and testing was an effective method to reduce" Plaintiff's risk. Dkt. No. 20 at 13. As the efficacy of COVID-19 vaccines and the effectiveness of a testing/regime to reduce Plaintiff's risk directly relate to all the proffered opinions, it is not entirely clear which opinions Plaintiff believes Dr. Lynch is *not* qualified to offer.

[4] The meaning of this and other uses of brackets in Plaintiff's briefing, in passages that do not appear to contain quoted material, is unclear. *See, e.g.*, Dkt. No. 20 at 4, 7, 8, 9, 16; Dkt. No. 23 at 12, 13; Dkt. No. 24 at 7, 9, 27, 29; Dkt. No. 33 at 3, 5, 6, 7, 9.

Personal Protective Equipment (PPE) and testing policies and was involved in the vaccination rollout for employees. *Id.* ¶¶ 2, 6. While Plaintiff asserts there is only "one published article attributable to Lynch" (Dkt. No. 20 at 9), this is unsupported. Dr. Lynch's CV in fact identifies 82 peer-reviewed publications. Dkt. No. 30 at 16–27. Fifteen of these articles are about COVID-19 and appear to have contributed to the developing scientific understanding of viral transmission and best practices for prevention and response. *Id.* Dr. Lynch was a leader and decisionmaker on the front lines of the public health response to COVID-19 from the very first case identified in the United States (in Everett, Washington) throughout the entirety of UW's emergency response. *Id.* ¶¶ 2, 6. These facts demonstrate that Dr. Lynch is abundantly qualified by both experience and training to render the opinions he offers. Plaintiff has not produced evidence to negate these qualifications, and the suggestion that Dr. Lynch has only "read[] other expert's [*sic*] reports [as] any doctor could do" is not only unfounded but also untethered from the actual facts.[5] Dkt. No. 20 at 8.

As other courts have found, "Dr. Lynch is qualified as an expert on infectious diseases generally and COVID-19 specifically," *Petersen v. Snohomish Reg'l Fire & Rescue*, No. C22-1674, 2024 WL 278973, at *6 n.13 (W.D. Wash. Jan. 25, 2024), *aff'd*, No. 24-1044, 2025 WL 2503128, at (9th Cir. Sep. 2, 2025) (quoting with approval the district court's conclusion regarding Dr. Lynch's qualifications). The Court further FINDS that this expertise qualifies Dr. Lynch to render the opinions he offers in this case.

//

//

---

[5] The Court will give Plaintiff's counsel the benefit of the doubt and not assume counsel was trying to intentionally mislead the Court. However, given numerous errors in Plaintiff's briefing, *see supra* n.1, the combined assertions that Dr. Lynch only had one published article and only read other experts' reports, and counsel's failure to acknowledge and apply the applicable standard for physician experts, the Court is left wondering if perhaps this language was copied and pasted from a challenge to a different expert in a different case.

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 7

### 2. Relevance of Opinions

"Expert opinion testimony is relevant if the knowledge underlying it has a 'valid . . . connection to the pertinent inquiry.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (omission in original) (quoting *Kumho Tire*, 526 U.S. at 149). "Relevancy simply requires that '[t]he evidence . . . logically advance a material aspect of the party's case.'" *Estate of Barabin,* 740 F.3d at 463 (alteration and omission in original) (quoting *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007)).

Defendant offers Dr. Lynch's testimony in support of its "undue hardship" defense to Plaintiff's claim, under the Washington Law Against Discrimination, that Defendant discriminated against her by failing to accommodate her sincerely held religious belief. Dkt. No. 28 at 3–4, 9; *see also* Dkt. No. 4 (answer to complaint) at 11 ¶ 71, 19 ¶ 2 (asserting defense). To prevail on its undue hardship defense, Defendant will need to establish that the accommodation sought by Plaintiff—here, remaining unvaccinated and fulfilling her usual job duties but submitting to twice-weekly COVID-19 tests, masking during work hours while in the presence of others, and eating her meals in her car, outdoors, or off site—would result in "substantial increased costs in relation to the conduct of [Defendant's] particular business." *Williams v. Legacy Health*, No. 22-6004, 2024 WL 3993162, at *6 (W.D. Wash. Aug. 29, 2024) (quoting *Groff v. DeJoy*, 600 U.S. 447 at 470–71 (2023)). "Costs" that courts consider are not limited to financial expenditures but also include non-monetary impacts such as an "accommodation's effect on co-workers" that "may have ramifications for the conduct of the employer's business," *Groff*, 600 U.S. at 472, as well as any "cost to an employer's mission." *Lavelle-Hayden v. Legacy Health*, No. C22-1752, 2024 WL 3822712, at *10 (D. Or. Aug. 14, 2024). "An accommodation that creates unreasonable safety risks, regardless of economic costs, also presents an 'undue hardship' for an employer." *Suarez v. State*, 3 Wn.3d 404, 427, 552 P.3d

786 (2024); *see also Lavelle-Hayden*, 2024 WL 3822712, at *10.

In the COVID-19 context, "[n]umerous courts have found the possibility of an unvaccinated individual getting others sick to be a non-speculative risk that a court may consider when performing an undue hardship analysis." *Bordeaux v. Lions Gate Ent., Inc.*, 703 F. Supp. 3d 1117, 1136 (C.D. Cal. 2023) (collecting cases). One critical dispute of fact related to these claims is the amount of health- and safety-related risk (and thus the amount of burden) a defendant would have taken on in accommodating an unvaccinated employee. Facts at issue in resolving this question here include Plaintiff's risk of contracting or spreading COVID-19 with her accommodations in place, as well as the comparable risk of Plaintiff contracting or spreading COVID-19 if she did *not* require accommodation (that is, if she became vaccinated and followed Defendant's general rules for its employees). Facts about how the virus that causes COVID-19 is spread, and the danger posed by the virus to different groups of people, are relevant in evaluating the potential consequences to Defendant of Plaintiff contracting or transmitting COVID-19 in her role as a police officer. Finally, because an employer asserting an undue hardship defense cannot be "judge[d] . . . with the clarity of hindsight or the benefit of post-pandemic debates over what measured responses frontline employers should have taken," expert testimony about what information would have been available to Defendant in late 2021 and early 2022 about the comparative effectiveness of vaccination and its alternatives is relevant. *Petersen*, 2025 WL 2503128, at *9.

Plaintiff repeatedly asserts that information about vaccines and safety risks is irrelevant but does not explain how the health- and safety-related cost Plaintiff's unvaccinated status imposed on Defendant can be evaluated without this information. *See, e.g.*, Dkt. No. 20 at 7 (vaccine efficacy is "not relevant to the inquiry"); *id.* at 9–10 ("Plaintiff is not contesting the importance of vaccines and this information would not assist the trier of fact in determining if

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 9

masking, testing, and social distancing are reasonable . . . ."); *id.* at 11 ("safety risks for unvaccinated individuals . . . do[] not help a trier of fact decide if masking and testing were reasonable accommodations . . . ."); *id.* (opinions on benefits of vaccination "have nothing to do with the issues in this case"). The one argument Plaintiff presents as to *why* these topics are irrelevant—"because the Plaintiff was exempt from the vaccine requirement . . . ." (*id.* at 12)—would appear to foreclose *any* consideration of health risks or other intrinsic "costs" of waiving an employment requirement for an objecting employee. But it is hard to see how an undue burden defense could ever be adjudicated without information about the purpose and value of the employment requirement from which a plaintiff is exempt or seeking exemption.

The Court FINDS that Dr. Lynch's opinions are relevant.

### 3. Reliability of Opinions

Reliability requires the court to assess "whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin*, 740 F.3d at 463 (quoting *Kumho Tire*, 526 U.S. at 149). In making its reliability determination, a court is concerned with the soundness of the methodology, not with the correctness of the expert's conclusions. *Id.*; *accord Primiano*, 598 F.3d at 564 ("[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." (alteration in original) (quoting *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1313 (9th Cir. 1995), *on remand from Daubert*, 509 U.S. 579)). Federal Rule of Evidence 702 provides that "an expert may testify 'in the form of an opinion or otherwise' if his or her 'specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue.'" *Hankey*, 203 F.3d at 1167 (quoting Fed. R. Evid. 702). As the Ninth Circuit has explained:

> Testimony by physicians may or may not be scientific evidence like the epidemiologic testimony at issue in *Daubert*. . . . Medicine is not a science but a learned profession, deeply rooted in a number of sciences and charged with the

> obligation to apply them for man's benefit. Evidence-based medicine is the conscientious, explicit and judicious use of current best evidence in making decisions about the care of individual patients. Despite the importance of evidence-based medicine, much of medical decision-making relies on judgment—a process that is difficult to quantify or even to assess qualitatively. Especially when a relevant experience base is unavailable, physicians must use their knowledge and experience as a basis for weighing known factors along with the inevitable uncertainties to make a sound judgment.

*Primiano*, 598 F.3d at 565 (citation modified). When courts consider the admissibility of testimony based not on scientific testimony but on some "other specialized knowledge," as here, Rule 702 generally is construed liberally. *Hankey*, 203 F.3d at 1168.

"When considering the applicability of *Daubert* criteria to [testimony by physicians based on their knowledge and experience], the inquiry must be flexible." *Primiano*, 598 F.3d at 565. Medical experts like physicians commonly base their opinions on their clinical experience as well as treatises and research published, as well as reliable data collected, by others. *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 289 F. Supp. 2d 1230, 1248 (W.D. Wash. 2003) (experts relied on case and adverse drug reports, textbooks and treatises, and the clinical experience of several experts and other scientists); *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124-25 (9th Cir. 1994) (expert opinion based on experience as a toxicologist, review of medical records and Dow studies, and general scientific knowledge from animal studies and biophysical data). However, "[p]eer reviewed scientific literature may be unavailable because the issue may be too particular, new, or of insufficiently broad interest, to be in the literature." *Primiano*, 598 F.3d at 565. This "[l]ack of certainty is not, for a qualified expert, the same thing as guesswork. Expert opinion testimony is . . . reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* (citation modified). Finally, the Ninth Circuit in *Primiano* provided the following guidance for applying *Daubert* to physicians' testimony: "'A trial court should admit medical expert testimony if physicians would

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 11

accept it as useful and reliable,' but it need not be conclusive because 'medical knowledge is often uncertain.'" *Id.* (quoting *Sandoval-Mendoza*, 472 F.3d at 655). The Ninth Circuit has further clarified that the reliability of experience-based expert testimony should be assessed on factors including "whether the expert's experience supports the expert's conclusions; whether the expert's reasoning is circular, speculative, or otherwise flawed; [and] whether the expert's reasoning is adequately explained." *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) (internal citations omitted).

Dr. Lynch explains in his declaration that his opinions were formed based on knowledge gained in "decades of working in clinical infectious diseases, infectious disease research, public health, and epidemiology," the medical studies and public health data he cites in his declaration and report, his review of over a dozen documents from this case, and a visit to the Issaquah Police Department. Dkt. No. 16 ¶¶ 5–6. This is clearly consistent with the types of sources typically relied on by medical professionals. Though Defendant provides extensive case law on medical expert testimony in its response (*see* Dkt. No. 28 at 6), Plaintiff offers no reply, ignoring entirely this Circuit's case law on expert testimony by medical professionals (*see generally* Dkt. No. 33). Nor does Plaintiff acknowledge the factors relevant to the reliability of experience-based expert testimony, as provided in *Holguin*—and, unrebutted, in Defendant's response. *See generally id.*; *see* Dkt. No. 28 at 6 (citing *Holguin*, 51 F.4th at 855). Instead, on reply, Plaintiff reiterates her critiques that Dr. Lynch employs "no methodology" (Dkt. 33 at 8), "ha[s] not done any antigen testing research" (*id.* at 7), and "is a physician at a hospital, not a scientist" (*id.* at 8). These assertions miss the mark. In ignoring the applicable standards, Plaintiff presents no clear argument that Dr. Lynch's experience does not support his conclusions (and the Court finds that it does); that his reasoning is circular, speculative, or otherwise flawed (and the Court finds that it is not); or that his reasoning is not adequately explained (and the Court finds that is is). *See*

*Holguin*, 51 F.4th at 855. Accordingly, the Court finds that Dr. Lynch's opinions have "a reliable basis in the knowledge and experience of the relevant discipline."

Reliability under FRE 702 also requires that expert testimony "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d). Plaintiff argues that Dr. Lynch's opinions are unreliable (and also irrelevant) because of certain facts he did not consider related to the specific masks and tests Plaintiff used during her temporary accommodation (and presumably would have continued to use if accommodated long term). *See, e.g.*, Dkt. No. 20 at 8 (Lynch not qualified because "unaware what type of test was utilized" by Plaintiff); *id.* at 11 ("lack of specific knowledge" about Plaintiff's N-95 mask "fit test," if any, is "fatal to the relevance inquiry"); *id.* at 15–16 (Dr. Lynch's opinion "is not reliable" because he does not analyze the "specific testing and masking program applied" to Plaintiff). But Dr. Lynch clearly opines that there was "*no* combination" of masks, tests, and other mitigations available to Defendant "equivalent to those same mitigations, or a subset of those mitigations, in addition to vaccination." Dkt. No. 21-1 ¶ 50. Plaintiff herself points out that Dr. Lynch supports his opinion on testing with both a meta-analysis of the effectiveness of antigen tests *and* data on PCR tests—that is, he has considered any test Plaintiff could possibly have used. Dkt. No. 20 at 15; *see also* Dkt. No. 21-1 ¶¶ 42–44. And several of the limitations Dr. Lynch identifies—for example, that employers cannot require masking outside work, or that a person can become infected and infectious between one test and the next—apply regardless of mask or test type. *See* Dkt. No. 21-1 ¶¶ 50, 46. In any event, attacks on experts arising from "the variables [allegedly] not considered are relevant to weight[,] not admissibility." *Elec. Mirror, LLC v. Avalon Glass & Mirror Co.*, No. C16-665, 2018 WL 5785385, at *1 (W.D. Wash. Nov. 5, 2018).

Further, where the particular facts of the case *are* relevant to Dr. Lynch's opinions, he considers them with specificity. For example, he considers Plaintiff's work duties, the settings in

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 13

which she worked, and the people with whom she interacted in her role as a police officer. *Id.* ¶¶ 86–87. Plaintiff's about-face argument that relying on these details constitutes "overreach" because Dr. Lynch "is not a general witness with personal knowledge" (Dkt. No. 20 at 15) fails under FRE 703, which instructs that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Dr. Lynch was given information about Plaintiff's job duties and also personally toured her workplace. Dkt. No. 21-1 ¶ 6. Plaintiff's duties and environment impacted how likely she was to transmit COVID-19, and to whom—considerations relevant to the cost of accommodating her—and Dr. Lynch's application of scientific information to these case-specific facts is sound methodology that will help the finder of fact. *See* Fed. R. Evid. 702(d) (expert opinion must "reflect[] a reliable application of the principles and methods to the facts of the case").

The Court FINDS that Dr. Lynch's opinions are reliable under FRE 702.

### 4. Plaintiff's Other Arguments

Repeatedly, in support of her arguments on both relevance and reliability, Plaintiff argues for exclusion based not on opinions Dr. Lynch has offered but opinions he has not offered, mostly related to Plaintiff's preferred framing of "the key issue" in this case. Dkt. No. 20 at 10 (opinions unhelpful because they "fail[] to speak to the key issue: how could masking and testing be safe and effective from October to February and then unsafe or ineffective starting February 16, 2022"); *see also id.* at 3 (no opinion on how "it was safe to accommodate Ms. Dixson . . . from October 18, 2021 to February 16, 2022, but not thereafter"); *id.* at 5 (no opinion on "why . . . from October to February" Plaintiff's accommodations were "not a risk") *id.* at 14 ("no method or analysis regarding the change from October 2021 to February 2022"); *id.* at 15 (no opinion on "how [Defendant] accommodated, presumably safely, Ms. Dixson during this time, but could not following the preset February 16, 2022 date"). Plaintiff also faults Dr. Lynch for

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 14

not being able to precisely quantify "the residual risk of acquisition and transmission" by an unvaccinated person with Plaintiff's accommodations (*id.* at 12; *see also id.* at 10–11, 13, 15) and not opining on the actual incidence of breakthrough infections among Defendant's employees (*id.* at 14) or Defendant's reliance on recommendations by the Centers for Disease Control and Prevention (*id.* at 21).

Assuming for the sake of argument that these "missing" opinions are relevant and otherwise admissible, their absence is a subject for cross-examination, not a basis for exclusion of Dr. Lynch's testimony under FRE 702. Any argument about what Dr. Lynch does not consider or address goes to the weight and credibility of his conclusions. *See Elec. Mirror*, 2018 WL 5785385, at *1; *see also Thomas v. YRC Inc.*, No. C16-6105, 2018 WL 919998, at *7 (S.D.N.Y. Feb. 14, 2018) ("Courts have long recognized that the existence of alternative factual scenarios that an expert has not considered in rendering an opinion goes only to the weight and credibility of the expert's testimony, not its admissibility."). As such, to exclude Dr. Lynch's testimony on the basis Plaintiff suggests would be to exceed the Court's authority in its gatekeeping role. *See Alaska Rent-A-Car*, 738 F.3d at 969 ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

The Court finds that Dr. Lynch is a qualified expert who has offered relevant, reliable opinions that will assist in the resolution of Defendant's undue hardship defense. Accordingly, Plaintiff's request to exclude Dr. Lynch's opinions under Rule 702 is DENIED.

B.  **Rule 403 Challenge**

Evidence will be excluded under FRE 403 only when its probative value is substantially outweighed by such unwanted dangers as unfair prejudice or misleading the jury. "Unfair prejudice" means "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it." *Heyne v. Caruso*, 69 F.3d 1475, 1481

(9th Cir. 1995) (quoting *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1134 (4th Cir. 1988)). Here, Plaintiff cites confusion of the issues, misleading the jury, and unfair prejudice as reasons to exclude Dr. Lynch's testimony under FRE 403. Dkt. No. 20 at 10, 12, 16.

The Court addresses each topic of testimony challenged under FRE 403 in turn.

### 5. Testimony on Vaccine Development and Approval

Plaintiff objects to Dr. Lynch testifying about the development and Federal Drug Administration ("FDA") approval of vaccines on the grounds that such testimony is both irrelevant and prejudicial, contending that "[t]he introduction of these facts is more likely to prejudice the trier of fact by implying that [Plaintiff] contests vaccines and FDA approval and/or importance or efficacy. (FRE 403) This is simply not true and the inclusion is prejudicial." Dkt. No. 20 at 10; *see also id.* at 12 ("The report itself will result in 'confusion of the issues' under FRE 403. It contains many paragraphs discussing the origins, progression, and supposed benefits of COVID vaccination, which have nothing to do with the issues involved in this case, does not help a trier of fact, and therefore, is not relevant." [6]). As to the relevance of these issues, the Court agrees with Defendant that "[t]his data provides relevant background information about options available to the City and others to control the spread of COVID-19 in the workplace in late 2021 and early 2022." Dkt. No. 28 at 13. As to any potential undue prejudice, Plaintiff explains neither how facts about vaccine history and development imply anything at all about Plaintiff's personal opinions, nor how such an implication could be prejudicial when the very basis of this case arises out of Plaintiff's religious objection to a workplace vaccination requirement. By contrast, Plaintiff's own sworn declaration, filed in support of her opposition to summary judgment, takes the unequivocal position that "vaccines . . . contain all kinds of

---

[6] As the Court is not considering the admissibility of potential trial exhibits at this stage, but only whether experts may testify as to their opinions, Plaintiffs' arguments about the admissibility of Dr. Lynch's report are disregarded as premature.

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 16

poisons and are derived from aborted fetal cells and corrupt my blood." Dkt. No. 26 (Rosa Decl.) at 4. Even had Plaintiff presented an otherwise colorable argument, the Court could not fairly exclude Defendant's evidence for merely *implying* what Plaintiff herself declares in no uncertain terms.

Equally undeveloped is Plaintiff's argument that "discussing the origins, progressions, and supposed benefits of COVID vaccination" is "inflammatory" or tends to "'suggest decisions on an improper basis'" because "the pandemic is a sensitive topic through which everyone suffered." Dkt. No. 20 at 12 (quoting *Hankey*, 203 F.3d at 1172). The COVID-19 pandemic is part of the fiber of this case, and Plaintiff has not shown either (a) that Dr. Lynch's vaccine-related testimony is more likely to provoke an emotional response than any other evidence that will be presented or (b) that any emotions evoked by the testimony would lead jurors to any particular conclusion on any issue in the case.

Accordingly, the Court DENIES Plaintiff's request to exclude Dr. Lynch's testimony related to COVID-19 vaccine development and approval under FRE 403.

### 6. Opinions on Vaccine Hesitancy and Misinformation

Plaintiff also objects to a section of Dr. Lynch's report entitled "Vaccine Hesitancy and Misinformation," on the grounds that it "is likely to be more prejudicial than beneficial to the inquiry." Dkt. No. 20 at 16. Besides this assertion, however, Plaintiff offers no argument on this topic.[7] "A mere recitation of an element or condition listed in Rule 403 is not an argument." *Innovative Sports Mgmt. Inc. v. Hunt*, No. C19-152, 2020 WL 5435312, at *2 (D. Ariz. May 12, 2020). This alone is a sufficient basis to reject Plaintiff's unreasoned request for exclusion.

---

[7] The remaining sentence in this paragraph has no apparent connection to the 403 analysis. *See* Dkt. No. 20 at 16. Instead, Plaintiff appears to again challenge the reliability of Dr. Lynch's opinion regarding the relative risk of a vaccinated or unvaccinated person. *See supra* Section III.A.3.

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 17

The Court notes, moreover, that most of the opinions Dr. Lynch offers in the challenged section are directly responsive either to specific statements in Plaintiff's complaint or to arguments advanced by Plaintiff during this litigation. For example, Dr. Lynch acknowledges that "[b]ecause vaccinated persons can become infected, that has led some people to mistakenly believe that there is no difference between vaccinated and unvaccinated persons in terms of their viral loads and/or infection rates," and explains the science illustrating why this belief is incorrect. Dkt. No. 21-1 ¶ 73. Plaintiff, through counsel, has put this subject at issue by, for example, asserting that Plaintiff posed "no risk or de minimis cost from October to February" and was in fact "the individual with the lowest risk rate" in Defendant's employ. Dkt. No. 24 (Response to Motion for Summary Judgment) at 17, 21. Relatedly, Plaintiff urges that Defendant should have based its accommodation decision on observations of Plaintiff and her coworkers during the period of her temporary accommodation. *E.g. id.* at 17. In response, Dr. Lynch explains why a "personal observation that vaccinated individuals got COVID-19 is irrelevant" and misleading, and why an employer cannot "rely on what it observes in its workplace regarding COVID-19 positive cases and vaccination status to guide its assessment of COVID-19 risks and ways to reduce them." Dkt. No. 21-1 ¶¶ 79, 80. The Court will not exclude these opinions on the ground that they may help Defendant's case. "Of course, all relevant evidence is prejudicial; Rule 403 is concerned only with limiting 'unfair' prejudice." *United States v. Castro*, No. CR19-295, 2023 WL 2786830, at *3 (D. Nev. Apr. 5, 2023) (quoting *United States v. Simpson*, 910 F.2d 154, 158 (4th Cir. 1990)). Plaintiff has not shown that allowing these opinions would be unfair, and indeed, it is more likely that Defendant would be unfairly prejudiced by their exclusion, which would hamper its ability to make its case in light of Plaintiff's arguments. In addition, as "many people have been exposed to health misinformation," these opinions may be helpful to jurors for whom such "misinformation has caused confusion." Dkt. No. 21-1 ¶ 71.

1   *Cf. United States v. Common*, 818 F.3d 323, 330 (7th Cir. 2016) (fingerprint expert's "testimony
2   was relevant to helping jurors overcome" a "common misconception").
3       Accordingly, the Court DENIES Plaintiff's request to exclude the opinions in the section of
4   Dr. Lynch's report titled "Vaccine Hesitancy and Misinformation."

### 7. Purported Opinion Regarding Temporary Accommodation

6       Finally, Plaintiff argues that Dr. Lynch's purported opinion that Defendant should not
7   have accommodated Plaintiff even temporarily "will likely confuse the trier of fact[,] not assist
8   [them]." Dkt. No. 20 at 10 (brackets[8] in original). The Court need not consider the likelihood of
9   confusion because Plaintiff presents no evidence that Dr. Lynch has ever expressed this opinion.
10  The deposition testimony cited by Plaintiff does not support her assertion that Dr. Lynch
11  "disagreed with the entirety of COI's decision to accommodate" Plaintiff and, in fact, suggests
12  that Dr. Lynch took care during his deposition *not* to opine on Defendant's temporary
13  accommodation decisions. *Id.* (citing 22-1 (Lynch Dep.) at 52–54 (88:14–24, 91:21–92:06)). For
14  example:

> Q. Do you think that the city should have implemented testing every day?
>
> A. I think that the city should have–let me put this another way. I think she should have gotten vaccinated.

18  Dkt. No. 22-1 at 52. The other testimony cited by Plaintiff arose from a question about why
19  Defendant would have accommodated her; Dr. Lynch responded that he was neither a human
20  resources person nor involved in the conversations. *Id.* at 55–56. Dr. Lynch tried to discern the
21  rationale by reading the documents with which he was presented and responded that
22  accommodating Plaintiff was a policy decision by human resources. *Id.* Nowhere in the
23  referenced material did he opine that Defendant should not have accommodated Plaintiff. These

---

[8] The meaning of these brackets is unclear. *See supra* n.4.

exchanges, viewed along with their mischaracterization here by Plaintiff's counsel (who also deposed Dr. Lynch), create the impression that counsel, not having solicited the deposition testimony she wanted from Dr. Lynch, decided to distort his testimony beyond recognition. The Court will give counsel the benefit of the doubt and assume that this was an honest mistake rather than a willful misrepresentation. Counsel is advised, however, that this is just one of several instances in which counsel has distorted or misrepresented deposition testimony.[9] Counsel should take more care in the future or run the risk of sanctions under Federal Rule of Civil Procedure 11. *See, e.g., Patterson v. Apple Comput., Inc.*, No. C04-405, 2005 WL 2277005, at *37 (N.D. Cal. Sep. 19, 2005) (levying Rule 11 sanctions based, in part, on counsel's misrepresentation of deposition testimony), *aff'd*, 256 F. App'x 165 (9th Cir. 2007).

For the foregoing reasons, Plaintiff's request to exclude Dr. Lynch's opinions as prejudicial or misleading under FRE 403 is DENIED.

### IV.   CONCLUSION

Accordingly, Plaintiff's motion to exclude the opinions of Defendant's expert (Dkt. No. 20) is DENIED.

Dated this 15th day of September, 2025.

Tana Lin
United States District Judge

---

[9] *See also, e.g.,* Dkt. No. 24 at 23 (Here, counsel cites to deposition testimony by Chief Paula Schwann in support of a statement that "The N95 masks never ran out of supply." But Schwann was actually asked if *tests* ever ran out and replied, "I don't recall us ever running out. . . . So I don't believe so but I don't—I don't completely recall." Dkt. No. 25-1 at 49–50.); Dkt. No. 24 at 10 ("Sgt. Huberdeau stated it was not a hardship of time to administer the tests because he could multi-task." In the deposition excerpt cited in support, Sgt. Dustin Huberdeau was not asked about hardship but about whether the testing "affect[ed his] efficiency on shift," and replied "I don't—that's kind of a difficult question. I—I don't know if it was—I mean, it took 20 minutes of my day at the beginning of my day, yes. But efficiency, I would like to say no, because I was able to multitask during that 15 minutes and do other things." Dkt. No. 25-5 at 12.).

ORDER ON MOTION TO EXCLUDE DEFENDANT'S EXPERT – 20